RECORD NO. 16-2378

### IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

**FREDDIE WAYNE HUFF, II,**

*Plaintiff-Appellant,*

**v.**

**NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY; DIVISION OF STATE HIGHWAY PATROL, a principal subunit of agency of the State of North Carolina; WILLIAM J. GREY, in his official capacity as Commanding Officer of the Division of State Highway Patrol and individually; JOSEPH A. COTTON, in his official capacity as the Director of internal Affairs with the Division of State Highway Patrol and individually,**

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO
District Court No. 1:15-cv-00599

### OPENING BRIEF OF PLAINTIFF-APPELLANT

Randolph M. James
RANDOLPH M. JAMES P.C.
P.O. Box 20069
Winston-Salem, North Carolina 27120
(336) 724-7707 (Telephone)
rmjames@rmjameslaw.com

Counsel for Plaintiff-Appellant

The Appellate Link    •    (804) 698-9471

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..........................................................................1

ISSUES PRESENTED FOR REVIEW ..................................................................2

STATEMENT OF THE CASE ................................................................................3

    INTRODUCTION ..............................................................................................3

    STATEMENT OF FACTS ................................................................................4

SUMMARY OF ARGUMENT ..........................................................................10

ARGUMENT ......................................................................................................12

    STANDARD OF REVIEW ..............................................................................12

**I.**    The district court erred by weighing the evidence and resolving genuine issues of material fact when it declared the reason underlying Trooper Huff's termination was his alleged untruthfulness and that Trooper Huff was in fact untruthful, which is not supported by the record .................12

    A. *The Reason Underlying Trooper Huff's Termination*

    B. *Trooper Huff's Truthfulness During His Internal Affairs Interview*

**II.**    The district court erred by relying on its impermissible determination that Trooper Huff was untruthful during the internal affairs interview as the basis for dismissing his Equal Protection, Substantive and Procedural Due Process, 42 U.S.C. § 1983, and Wrongful Discharge in Violation of Public Policy claims .................................................................................17

**III.**    The district court erred by denying a trier of fact the opportunity to determine whether the opportunity to be heard provided by the Government was "meaningful" under the Due Process Clause .................18

**IV.** **The district court erred by impermissibly weighing evidence and determining a genuine issue of material fact by concluding that Trooper Huff's Substantive Due Process rights were not violated because the Government's conduct was not egregious or outrageous** ........................19

**V.** **The district court erred in denying Trooper Huff's claims under the Equal Protection Clause based upon the "class of one" theory** ..............23

**VI.** **The district court erred by determining that the Government could not be sued for damages under 42 U.S.C. § 1983 without addressing Trooper Huff's claims against the Government for injunctive relief** ...................23

**VII.** **The district court erred in wrongfully concluding that Trooper Huff was required to show that the State Highway Patrol had a custom or policy that played a part in the violation of his constitutional rights** ................24

**VIII.** **The district court erred by impermissibly resolving the disputed issue of material fact regarding the Defendants conspiring with one another to violate Trooper Huff's rights under 42 U.S.C. § 1983** ............................25

**IX.** **The district court erred in determining that there was insufficient evidence to support the contention that Trooper Huff was terminated in retaliation for charging Mr. Stanberry with a DWI** ................................28

**CONCLUSION** ....................................................................................29

**REQUEST FOR ORAL ARGUMENT** ...............................................30

**CERTIFICATE OF COMPLIANCE** ..................................................31

**CERTIFICATE OF SERVICE** ...........................................................32

iii

# TABLE OF AUTHORITIES

**Cases:**

1. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).......................12, 13, 17, 20

2. *Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013) .............................................28

3. *Bradley v. N.C. Dep't of Transp., Div. of Motor* Vehicles, 286 F. Supp. 2d 697 (W.D. N.C. 2003) .................................................................................24

4. *Brady v. Maryland*, 373 U.S. 83 (1963) .......................................................22

5. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008)...............................23

6. *Giglio v. United States*, 405 U.S. 150 (1972).................................................22

7. *Hafer v. Melo*, 502 U.S. 21 (1991) ................................................................25

8. *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416 (4th Cir. 1996)..............26

9. *Matthews v. Elridge*, 424 U.S. 319 (1976). ..................................................18

10. *Rana v. United States*, 812 F.2d 887 (4th Cir. 1987) ...................................18

11. *Roe v. Doe*, 28 F.3d 404 (4th Cir. 1994) ......................................................12

12. *Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317 (4th Cir. 2012). .............................................................................................................20

13. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).......................24

**Statutes:**

14. 28 U.S.C. § 1291

15. 28 U.S.C. § 1331.............................................................1

16. 28 U.S.C. § 1367.............................................................1

17. 42 U.S.C. § 1983.......................................... 1, 2, 3, 4, 11, 17, 23, 24, 25, 26

**Rules:**

18. Fed. R. Civ. P. 56(a). ....................................................12

## JURISDICTIONAL STATEMENT

The Fourth Circuit Court of Appeals has jurisdiction over this case pursuant to 28 U.S.C. § 1291 because Plaintiff-Appellant appeals from a final decision of the District Court for the Middle District of North Carolina, which disposed of all of Plaintiff-Appellant's claims.

The District Court for the Middle District of North Carolina properly exercised Subject Matter Jurisdiction over Plaintiff-Appellant's claims pursuant to 28 U.S.C. § 1331, as Plaintiff-Appellant alleged claims for relief arising under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. The District Court for the Middle District of North Carolina properly exercised Subject Matter Jurisdiction over Plaintiff-Appellant's North Carolina state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff-Appellant's state law claims are part of the same case and controversy described by Plaintiff-Appellant's federal claims.

The final judgment from which Appellant appeals was entered on 2 November 2016, and Plaintiff-Appellant timely filed a Notice of Appeal on 2 December 2016.

## ISSUES PRESENTED FOR REVIEW

1.     Did the district court err by impermissibly weighing the evidence and resolving genuine issues of material fact that the Government's decision to terminate Trooper Huff was based upon Trooper Huff's allegedly untruthful statements during his internal affairs interview and that Trooper Huff was in fact untruthful during his internal affairs interview, when the record does not support that finding?

2.     Did the district court err when relying on its impermissible determination that Trooper Huff was untruthful during the internal affairs interview as the basis for dismissing Trooper Huff's claims against the Government for violating Trooper Huff's Equal Protection rights, Trooper Huff's Substantive and Procedural Due Process rights, 42 U.S.C. § 1983, and for Wrongful Discharge in Violation of Public Policy?

3.     Did the district court err in failing to allow the trier of fact the opportunity to consider whether the notice and opportunity to be heard provided by the Government was "meaningful" under the Due Process Clause?

4.     Did the district court err in impermissibly weighing evidence and determining that Trooper Huff's Substantive Due Process rights were not violated because the Government's conduct was not egregious or outrageous?

5.    Did the district court err in denying Trooper Huff's claims under the Equal Protection Clause based upon the "class of one" theory?

6.    Did the district court err by determining that the Government could not be sued for damages under 42 U.S.C. § 1983 but failing to address Trooper Huff's claims against the Government for injunctive relief?

7.    Did the district court err in wrongfully concluding that Trooper Huff was required to show that the State Highway Patrol had a custom or policy that played a part in the violation of his constitutional rights?

8.    Did the district court err in impermissibly determining the disputed issue of material fact that there was no evidence to support a finding that the Defendants conspired with one another to violate Trooper Huff's rights under 42 U.S.C. § 1983?

9.    Did the district court err in determining that there was insufficient evidence to support the contention that Trooper Huff was terminated in retaliation for charging Mr. Stanberry with driving under the influence?

## STATEMENT OF THE CASE

### <u>Introduction</u>

Plaintiff-Appellant Freddie Wayne Huff, II ("Trooper Huff"), a North

Carolina Highway Patrol Trooper, and a decorated, veteran officer of the Lexington, North Carolina Police Department, filed this action against the North Carolina Department of Public Safety, Division of State Highway Patrol; and William J. Grey, Commanding Officer of the SHP; Jennifer Harris, Director of Professional Standards for the SHP; and Joseph Cotton, Director of Internal Affairs for the SHP, in their individual capacities (collectively, "the Government" or "Defendants"), seeking damages and injunctive relief for his unjust, arbitrary, and capricious discipline and termination.    Trooper Huff alleged violations of the First and Fourteenth Amendments of the United States Constitution; Article I §§ 1, 19, 35, and 36 of the North Carolina Constitution; 42 U.S.C. § 1983; and North Carolina statutory and common law.  The Government filed a motion for summary judgment on 1 August 2016.  Oral arguments were held on 25 October 2016 pursuant to the Government's motion.  Thereafter, in an order dated 2 November 2016, the district court granted the Government's motion for summary judgment, thereby dismissing all of Trooper Huff's claims.  This appeal followed.

## Statement of Facts

On 11 January 2014, during a roadblock license check, Jacob Webster ("Webster") was found to possess what appeared to be a State Highway Patrol ("SHP") campaign hat and hat badge.  (Appx. 103).  Thereafter, Internal Affairs

investigators Lieutenant Donna Carter ("Carter") and First Sergeant B. Snotherly ("Snotherly") interviewed Webster, who stated that he bought the hat and badge from Freddie Wayne Huff. (Appx. 108:4, 109:28–29). This prompted Carter and Snotherly to interview Trooper Huff on 16 January 2014. (Appx. 110:1–4).

During the interview, Trooper Huff explained that he was an avid collector of SHP memorabilia, which he purchased all over the United States, and that the campaign hat and hat badge were personal items that he had purchased from the Internet. (Appx. 111:14–18, 120:35–36). Some time into the interview, after numerous questions about belts, Snotherly asked Trooper Huff whether he had sold any shoes *or* any belts, to which Trooper Huff initially responded, "nope." (Appx. 122:7–9). However, just seconds later, Trooper Huff corrected himself and stated, in reference to the shoes, "Oh yeah. That's right. I got those – I got those for resale." (Appx. 122:18). Then, almost immediately thereafter, Trooper Huff answered Snotherly's additional question about shoes by responding, "Yeah. I think I sold some shoes, too." (Appx. 122:38, 123:3). Importantly, prior to any questions regarding shoes, Trooper Huff offered to show Carter and Snotherly his eBay history. (Appx. 116:20–34, 120:9–11).

In fact, Trooper Huff had bought a pair of Bates Lites chukka boots with his personal funds for $110.00 to replace his state-issued boots, which were

5

uncomfortable and nondurable. (Appx. 127, 133:8–17). He thereafter sold the state-issued shoes on eBay in an effort to defray the expense associated with the newly purchased chukka boots. (Appx. 127, 133:8–17, 134:6). However, Trooper Huff accidentally set the eBay reserve at $0.50, the price for which the shoes ultimately sold. (Appx. 133:8–17).

Following the interview, Carter typed up the report of incident, which included only a single violation of Patrol Rules. (Appx. 103–107, 144:2–4). Then, on 17 January 2014, Cotton, based on the report of incident, initiated a personnel complaint, which stated that Trooper Huff admitted to selling a pair of state-issued shoes on eBay. (Appx. 154–156). Cotton then attached the personnel complaint to a memorandum addressed to Troop Captain Hayes ("Hayes"), charging Trooper Huff with one personal conduct violation of "Dir. No. H.01, Sect. IV (Violation of Rules) to wit: O.03, Sect. V (Unserviceable Items Exchanges)." (Appx. 157).

Importantly, this charge alone was not enough to terminate Trooper Huff. In fact, Hayes, who described Trooper Huff as a "good guy and a good officer," spoke to Lieutenant Colonel Billy Clayton ("Clayton"), and Clayton stated that he thought Trooper Huff would only be fined for the violation. (Appx. 160:1–5, 164:22–25, 165:1–10). Clayton's statement is supported by the fact that troopers had, for some number of years, traded state-issued, low-cut Oxford's for higher quality Chukka

6

boots with Bob's Army Navy Surplus ("Bob's") in Raleigh. (Appx. 317:4–25, 318–321). Robert Dixon ("Dixon"), owner of Bob's, remembers troopers upgrading their state-issued boots for a higher quality Chukka boot. (*Id.*). Specifically, Bob's would issue troopers a credit for the state-issued boots, which they used toward the purchase of higher quality boots, and Bob's thereafter resold the state-issued shoes. (*Id.*). Even a court found that, regardless of whether Trooper Huff had violated a SHP policy by selling his state-issued boots on the Internet, he did so "in good faith," a decision which was later affirmed by the North Carolina Court of Appeals. (Appx. 262–65).

Moreover, between the date of his internal affairs interview and 10 April 2014, Trooper Huff was neither taken off of patrol nor placed on administrative leave. (Appx 183:1–4). While on patrol, on 16 March 2014, Trooper Huff stopped Scott Stanberry ("Stanberry") for a "DWI and Driving the Wrong Way on a One Lane Road." (Appx. 329). During the stop, Stanberry, a politically connected individual, indicated that he was friends with then-Governor Pat McCrory and that he would have Trooper Huff's job. (Appx. 251:16–18).

Only about a month thereafter, on 10 April 2014, Harris sent Colonel William Grey ("Grey") a memorandum, stating that the Unserviceable Items violation was substantiated. (Appx. 158). This memorandum also included two additional

"substantiated" charges—Dir. No. H.01, Section VII ("Truthfulness") and Dir. No. H.01, Section III ("Conformance to Law"). (*Id.*) Tellingly, no SHP member involved in the case could identify who originated those additional charges. (Appx. 153:11–25, 284:18–25, 285:22–25, 290:10–25, 291). Specifically, Carter indicated that she was unaware of who made the decision to add the two additional charges and stated that, when she prepared the Report of Investigation, it only included a single charge. (Appx. 153:11–25). Cotton stated that he believed Harris made the recommendation to add the untruthfulness and conformance to law charges. (Appx. 284:18–25, 285:22–25). However, Harris denied that and said that she received a pre-filled Report of Investigation, which already included the two additional charges. (Appx. 290:10–25, 291). Despite this, Harris, in her 10 April 2014 memorandum, recommended terminating Trooper Huff based upon the newly added charges. (Appx. 158).

On 11 April 2014, Trooper Huff was put on investigatory placement to allow time for a pre-disciplinary conference, and on the same day, Grey sent Harris a memorandum concurring with her recommendation to terminate Trooper Huff. (Appx. 217–219, 222). Trooper Huff's pre-disciplinary conference was held on 16 April 2014, where Harris read the additional charges to Trooper Huff and told him that this was his opportunity to present any evidence. (Appx. 223:1–4, 224:30–40,

8

225). Despite Harris's statement, Grey admitted that there was nothing Trooper Huff could have done to prevent his termination, even stating that, "the fact is [Trooper Huff] did lie." (Appx. 185:13–25, 186:1–13). Even still, during the hearing, Trooper Huff presented evidence and told Harris that he was an expert witness for the Fourth Circuit Court of Appeals, as well as a state certified instructor through the federal motor carriers. (Appx. 233:30 – 40, 234:1–8).

On 21 April 2014, Trooper Huff was terminated via memorandum from Grey's office. (Appx. 235–238). Following Trooper Huff's termination, Hayes again spoke with Clayton, who told Hayes that the decision to terminate Trooper Huff came from "above his pay grade." (Appx. 166:14–25, 167:1–4).

Thereafter, the SHP reported Trooper Huff's termination to the Criminal Justice Education and Training Standards Commission (Appx. 236–238). The SHP's report stated that the SHP was aware of "potential criminal action or potential misconduct" and included an attachment stating that Trooper Huff violated N.C.G.S. § 14-91, "Embezzlement of State Property by Public Officer and Employees" and was untruthful during an internal affairs investigation. (*Id.*). In addition, the SHP sent a memorandum to the Forsyth County District Attorney, Jim O'Neill ("O'Neill"), indicating that Trooper Huff had been terminated. (Appx. 239). O'Neill then followed up with the SHP and was told that Trooper Huff was

9

terminated for untruthfulness.  (Appx. 240).  When Trooper Huff later called the district attorney's office, he was told that Stanberry's case had been dismissed. (Appx. 252:4–8).

After his termination, Trooper Huff argued that the investigation conducted was improper, that other troopers traded shoes at Bob's, and that he was terminated under the pretext of untruthfulness but was really terminated for arresting Stanberry for driving while impaired. (*See* Appx. 85).  However, no SHP investigation was conducted regarding Trooper Huff's allegations.  (*Id.*).

## SUMMARY OF THE ARGUMENT

The district court impermissibly resolved numerous genuine issues of material fact.  For example, the district court determined the reason underlying Trooper Huff's termination because it believed the Government's contention that Trooper Huff was terminated for untruthfulness when, as the record clearly demonstrates, he was actually terminated for charging a politically connected individual with driving while impaired.  The district court also erred in concluding that Trooper Huff was untruthful during his internal affairs interview when the record does not support this finding, but rather shows that Trooper Huff was in fact truthful.  Moreover, the district court erred in relying on its impermissible determination that Trooper Huff was untruthful as the basis for dismissing Trooper Huff's claims against the

10

Government for violating his Equal Protection rights, his Substantive and Procedural Due Process rights, § 42 U.S.C. 1983, and for Wrongful Discharge in Violation of Public Policy. In addition, the district court erred in finding that the Government's conduct was not egregious or outrageous, such that it "shocks the conscience" and by determining there was no evidence that Defendants conspired with one another to violate Trooper Huff's rights under 42 U.S.C. § 1983.

Additionally, the district court erred in denying the trier of fact the opportunity to determine whether Trooper Huff's opportunity to be heard provided by the Government was meaningful under the Due Process Clause. The district court also erred in determining that Trooper Huff's claims under the Equal Protection Clause based upon a "class of one" theory when the "class of one" rationale should not apply.

Moreover, the district court acted under numerous misapprehensions of law. For example, the court dismissed Trooper Huff's 42 U.S.C. § 1983 claims because it found that he could not sue the Government for damages, but the court failed to acknowledge that he also brought claims for prospective injunctive relief, including reinstatement. The district court also erroneously concluded that Trooper Huff was required to show that the State Highway Patrol had a custom or policy that played a part in the violation of his constitutional rights because this is not required when

bringing a claim against the government entity itself. The district court further erred in determining that there was insufficient evidence that Trooper Huff was terminated in retaliation for charging Stanberry with driving while impaired when, as explained below, the record is actually replete with such evidence. Thus, this Court should reverse the district court's dismissal of Trooper Huff's claims.

## ARGUMENT

**Standard of Review:**

Summary judgment is only appropriate "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Material facts are those that "might affect the outcome of the suit under the governing law." *Id.* In evaluating the evidence, the court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Id.* Similarly, the circuit court reviews a grant of summary judgment *de novo* and "must draw all reasonable inferences in favor of the appellant." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994).

**I.     The district court erred by weighing the evidence and resolving genuine issues of material fact when it declared the reason underlying Trooper Huff's termination was his alleged untruthfulness and that**

**Trooper Huff was in fact untruthful, which is not supported by the record.**

The district court found that "[a]ll the evidence shows the defendant had a rational basis to terminate the plaintiff based on the finding of untruthfulness and that the defendant always fired troopers found to be untruthful" and that Plaintiff-Appellant was "terminate[d] . . . based on the finding of untruthfulness."[1] (Appx. 390). However, "at the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter *but to determine whether there is a genuine issue for trial*." *Anderson*, 477 U.S. at 249 (emphasis added). The record plainly demonstrates that there are clear and genuine issues of material fact regarding the Government's reason(s) for terminating Trooper Huff's employment with the North Carolina Highway Patrol and does not support the district court's conclusion that Trooper Huff was untruthful.

A. *The Reason Underlying Trooper Huff's Termination*

The timeline and sequence of events from the date of Trooper Huff's internal affairs interview to his ultimate termination, as well as statements regarding those events, indicate there is a genuine dispute regarding the real reason for his termination. Specifically, following Trooper Huff's 16 January 2014 internal affairs

---

[1] Notably, in the same Order and Judgment, the court also stated that, "the evidence before the Highway Patrol was also sufficient to conclude that the plaintiff had been *forgetful, not untruthful*." (Appx. 390) (emphasis added).

13

interview with Carter and Snotherly, wherein they discussed his selling of state-issued shoes, Carter drafted a Report of Incident, which included only *a single violation* of Patrol Rules. (Appx. 103–107, 144:2–4). Based on the Report of Incident, on 17 January 2014, Cotton initiated a personnel complaint, stating that Trooper Huff admitted to selling a pair of state-issued shoes on eBay. (Appx. 154–156). Thereafter, Cotton attached the personnel complaint to a memorandum addressed to Hayes, charging Trooper Huff with *one* personal conduct violation of "Dir. No. H.01, Sect. IV (Violation of Rules) to wit: 0.03, Sect. V (Unserviceable Items/Exchanges)." (Appx. 157). After receiving that memo, Hayes spoke with Clayton, who stated that he believed Trooper Huff would only be fined for the stated violation. (Appx. 164:22–25, 165:1–10).

Between his internal affairs interview on 16 January 2014 and 10 April 2014, Trooper Huff was neither taken off patrol nor placed on administrative leave. (Appx 183:1–4). In fact, during this timeframe, on 16 March 2014, Trooper Huff stopped Stanberry and charged him with driving while impaired. (Appx. 329).

Tellingly, on 10 April 2014, *eighty-five days* after Trooper Huff's internal affairs interview—but just *twenty-six days* after Trooper Huff stopped Stanberry and charged him with driving while impaired—Harris sent Grey a memorandum, which stated that the Unserviceable Items violation was substantiated and included two *new*

14

"substantiated" charges, a violation of Dir. No H.01, Section VII ("Truthfulness") and Dir. No. H.01, Section III ("Conformance to Law"). (Appx. 158). Though the initial charge alone was not enough to terminate Trooper Huff and she could not identify who was responsible for originating the two additional charges, Harris, based on these newly added charges, recommended termination. (Appx. 158, 290:10–25; 291).

On 11 April 2014, Trooper Huff was put on investigatory placement, and on that same day, Grey—who also could not identify who was responsible for including the two additional charges in the Report of Investigation—sent Harris a memorandum concurring with Harris's recommendation to terminate Trooper Huff. (Appx. 217–219, 222). On 21 April 2014, Trooper Huff was terminated. (Appx. 235–238). When Hayes asked Clayton about Trooper Huff's termination, Clayton replied that the decision came from "above his pay grade." (Appx. 166:14–25, 167:1–4).

The timing and sequence of these events, as well as the statements regarding Trooper Huff's initial charge, new charges, and ultimate termination, indicate that Trooper Huff was terminated not for his alleged untruthfulness but for charging Stanberry—a politically connected individual who was forthright about his connection to then-Governor Pat McCrory and ultimately threatened Trooper Huff's

15

job—with driving while impaired. Thus, to the extent the Government claims otherwise, i.e., that Trooper Huff was terminated for his alleged untruthfulness, there is a genuine issue of material fact as to the true reason for Trooper Huff's termination. The district court therefore erred by improperly resolving a disputed issue of material fact regarding the reason for Trooper Huff's termination—a question that is ripe for determination by a jury.

### B. *Trooper Huff's Truthfulness During his Internal Affairs Interview*

Trooper Huff was truthful during his internal affairs interview. During the interview, after repeated questions about belts, Snotherly asked Trooper Huff whether he had sold any shoes *or* any belts, to which Trooper Huff initially responded, "nope." (Appx. 122:7–9). However, just seconds after accidentally misspeaking, Trooper Huff corrected himself and stated, in reference to the shoes, "Oh yeah. That's right. I got those – I got those for resale." (Appx. 122:18). Then, almost immediately thereafter, Trooper Huff answered Snotherly's additional question about shoes by responding, "Yeah. I think I sold some shoes, too." (Appx. 122:38, 123:3). Therefore, at worst, Trooper Huff initially misspoke only to instantly correct his innocent misstatement.

Moreover, prior to Snotherly's question regarding the sale of shoes, Trooper Huff offered to retrieve his eBay history and present it to Snotherly and Carter by

logging onto one of their computers.  (Appx. 116:20–34, 120:9–11).  Clearly, Trooper Huff simply misspoke when he initially answered Snotherly's question about selling shoes, as his eBay history would have included his selling of state-issued shoes.  Trooper Huff's offer to retrieve his eBay history also shows that, even prior to the interview, he did not intend to deceive Snotherly and Carter, but was instead honest from the outset.

Even if the record does not support the contention that Trooper Huff was truthful during his interview, then, *at minimum*, the record reveals a genuine issue of material fact as to whether Trooper Huff was truthful.  Therefore, at minimum, the arguments set out above reveal that the issue of whether Trooper Huff was truthful during his internal affairs interview is an issue to be determined by a jury.

**II.    The district court erred by relying on its impermissible determination that Trooper Huff was untruthful during the internal affairs interview as the basis for dismissing his Equal Protection, Substantive and Procedural Due Process, 42 U.S.C. § 1983, and Wrongful Discharge in Violation of Public Policy claims.**

The district court erred by relying on its impermissible determination that Trooper Huff was untruthful as the basis for dismissing Trooper Huff's above-referenced claims.  *See Anderson*, 477 U.S. at 249.  As explained above, the record does not support the district court's conclusion that Trooper Huff was untruthful.  *See supra* Section II.  Rather, the record shows that Trooper Huff was in fact truthful,

and at the very least, reveals that there is a genuine issue of material fact as to whether Trooper Huff was truthful. *Id.* As such, even if the record does not show that Trooper Huff was truthful, the question of Trooper Huff's truthfulness is a question of fact properly resolved by a jury. Thus, the district court erred in dismissing the above-referenced claims based on its impermissible determination that Trooper Huff was untruthful.

### III. The district court erred by denying a trier of fact the opportunity to determine whether the opportunity to be heard provided by the Government was "meaningful" under the Due Process Clause.

"The fundamental requirement of due process is the opportunity to be heard 'at a *meaningful time* and in *a meaningful manner*.'" *Matthews v. Elridge*, 424 U.S. 319, 333 (1976) (citation omitted) (emphasis added). Moreover, "the meaningfulness of [a claimant's] chance to respond is a matter for the finder of fact." *Rana v. United States*, 812 F.2d 887, 890 (4th Cir. 1987). However, the district court, in support of its decision to dismiss Trooper Huff's procedural due process claim, simply concluded that "[t]he evidence is that the plaintiff had notice and a hearing before he was terminated." (Appx. 391).

The record shows a genuine issue of material fact as to whether the opportunity to be heard that the Government provided was "meaningful." In a memorandum dated 10 April 2014, Harris recommended terminating Trooper Huff.

18

(Appx. 158).   Then, on 11 April 2014, Grey sent a memorandum to Harris agreeing with Harris's recommendation that Trooper Huff be terminated.  (Appx. 222).  This joint decision occurred *five days prior* to Trooper Huff's pre-disciplinary hearing, which was held on 16 April 2014.  (Appx. 223:1–4).  The fact that the decision to terminate Trooper Huff occurred days before his pre-disciplinary hearing demonstrates that, at the hearing, Trooper Huff could not present mitigating and/or additional evidence to prevent his termination, as he was presumed by his superiors to have been untruthful during his internal affairs interview.

Moreover, Grey admitted that there was *nothing* Trooper Huff could have done to prevent his termination.  (Appx. 185:13–25, 186:1–13).  In fact, when discussing "what [Trooper Huff] could do to not be fired[,]" Grey stated that "the fact is [Trooper Huff] did lie." (*Id.*).  This provides further support for the contention that, given his superiors' premature conclusion that he was untruthful, the hearing that the Government afforded Trooper Huff was not a meaningful opportunity to change the course of his fate.  Instead, Trooper Huff's fate was predetermined.  Thus, the district court erred in failing to allow a jury to determine whether Trooper Huff's opportunity to be heard was meaningful.

**IV.    The district court erred by impermissibly weighing evidence and determining a genuine issue of material fact by concluding that Trooper Huff's Substantive Due Process rights were not violated because the Government's conduct was not egregious or outrageous.**

19

The district court, in support of its decision to dismiss Trooper Huff's Substantive Due Process claim, stated, "[t]his claim is dismissed because the conduct at issue . . . was not egregious or outrageous." (Appx. 391). This was error.

"The touchstone of due process is protection of the individual against *arbitrary action* of the government[,]" with arbitrary action "encompass[ing] 'only the most egregious official conduct,' namely that which 'shocks the conscience.'" *Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317, 321 (4th Cir. 2012) (citations omitted). "[C]onduct that shocks the conscience . . . refers . . . to 'conduct intended to injure in some way unjustifiable by any government interest.'" *Id.*

Here, the district court erred by impermissibly weighing evidence and determining a genuine issue of material fact regarding the reason underlying Trooper Huff's termination and, based on that determination, concluding that Trooper Huff's substantive due process rights were not violated because the Government's conduct was not egregious or outrageous. *See Anderson*, 477 U.S. at 249. In so doing, the district court simply accepted the Government's version of the facts without considering the facts presented by Trooper Huff, which show that the Government's conduct *was* in fact egregious or outrageous.

As set forth above, the record indicates that Trooper Huff was terminated not for his alleged untruthfulness but for charging Stanberry—a politically connected

20

individual who threatened Trooper Huff's job—with driving while impaired.  *See supra* Section I.  Essentially, Trooper Huff was terminated from the SHP for carrying out his sworn duty as a state trooper, which includes stopping and charging drivers who are operating vehicles while impaired.   Importantly, Trooper Huff was terminated in order to help a politically connected individual, one whom was friends with then-Governor Pat McCrory, avoid conviction for driving while impaired.  In fact, Stanberry's case was ultimately dismissed as a result of Trooper Huff's termination.

Even if Trooper Huff was not terminated to help Stanberry avoid conviction for driving while impaired, his termination was completely arbitrary and capricious. Trooper Huff simply acted pursuant to an unwritten policy when he upgraded his state-issued shoes by purchasing more expensive chukka boots and selling the state-issued shoes on eBay to help defray the cost.  (Appx. 317:4 – 25, 318–321). Thus, the single charge relating to Trooper Huff's selling of state-issued shoes was not enough to terminate him, and someone—who could not be identified by any member of the SHP involved in Trooper Huff's termination—originated two additional charges, which were enough to terminate Trooper Huff and ultimately resulted in his termination.  (Appx. 153:11–25, 284:18–25, 285:22–25, 290:10–25, 291).

Trooper Huff was not only injured in the form of being terminated from the SHP, but also in having his reputation tarnished, such that he would not be able to work in law enforcement ever again.  Prior to his termination, Trooper Huff had served as a member of the Lexington Police Department Interdiction Team, won national awards, been an expert witness in the Fourth Circuit for criminal interdiction, and conducted training seminars for federal and state agencies. (Appx. 233:30–40, 234:1–8, 242).   However, after the two additional charges— untruthfulness and embezzlement—were cryptically added to the Report of Incident, Trooper Huff was terminated and the reasons for his termination were reported to the Criminal Justice Education and Training Standards Committee.  (Appx. 236– 238).  These additional charges are those that would likely have to be disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), preventing Trooper Huff from testifying as a law enforcement officer or expert witness.  Thus, the conduct of the Government in terminating Trooper Huff, in which they intended injuries to Trooper Huff—the loss of his employment as a state trooper and the tarnishing of his reputation—is just the type of egregious or outrageous conduct that "shocks the conscience."  The district court therefore erred in determining a genuine issue of material fact as to the reason underlying Trooper Huff's termination, thereby accepting the Government's version

of the facts and failing to consider the facts set forth by Trooper Huff, which shows that the Government's conduct was in fact egregious or outrageous, such that it shocks the conscious.

**V.    The district court erred in denying Trooper Huff's claims under the Equal Protection Clause based upon the "class of one" theory.**

In support of its decision to dismiss Plaintiff's Equal Protection claim, the district court stated that, "[w]hile the evidence before the Highway Patrol certainly was also sufficient to conclude that the plaintiff had been forgetful, not untruthful, weighing the evidence and making a decision was within the discretion of the employer." (Appx. 391). However, the "class of one" rationale set forth in *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008), which is that the Government should have discretion acting as an employer with respect to its decisions to terminate its employees, should not apply when the Government's decision to terminate an employee is a concerted effort to help a politically connected individual avoid conviction for driving while impaired.   The district court therefore erred in dismissing Plaintiff's Equal Protection claim based on the "class of one" theory.

**VI.   The district court erred by determining that the Government could not be sued for damages under 42 U.S.C. § 1983 without addressing Trooper Huff's claims against the Government for injunctive relief.**

Although, "[i]n general, states and their agencies are protected from § 1983 suits by the Eleventh Amendment[,] . . . suits for prospective injunctive relief,

23

including reinstatement, from ongoing violations of federal law fall within an exception to the general rule and are not barred by the Eleventh Amendment." *Bradley v. N.C. Dep't of Transp., Div. of Motor* Vehicles, 286 F. Supp. 2d 697, 702 (W.D. N.C. 2003); *cf. Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). However, here, the district court simply found that, "the plaintiff's federal constitutional claims for money damages against the Department are dismissed . . . [because] the state cannot be sued for damages under section 1983." (Appx. 392). In so doing, the district court failed to address the fact that Trooper Huff also asserted claims for injunctive relief against the Government, including reinstatement. Because Trooper Huff asserted claims for prospective injunctive relief, the Government is *not* protected by the Eleventh Amendment. Thus, the district court erred in failing to address Trooper Huff's claims against the Government for prospective injunctive relief.

**VII.  The district court erred in wrongfully concluding that Trooper Huff was required to show that the State Highway Patrol had a custom or policy that played a part in the violation of his constitutional rights.**

The district court found that "[t]he plaintiff's federal constitutional claims for money damages against *the Department* are dismissed for the additional reason that there is no evidence of custom or policy."[2]  (Appx. 392) (emphasis added).  But

---

[2] It is important to note that the district court, in this part of its Order and Judgment, did not address

24

where "the real party in interest . . . is the governmental entity . . . , 'the entity's 'policy or custom' must have played a part in the violation." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation omitted).  Thus, claims brought directly against a state agency are not subject to the "custom or policy" restraint that governs official capacity actions brought against government employees. *See id.*

Here, Trooper Huff's claims are brought directly against the North Carolina Department of Public Safety, Division of State Highway Patrol.  Thus, his claims are not subject to the "custom or policy" restraint.  The trial court therefore erred in concluding that Trooper Huff's claim against the North Carolina Department of Public Safety, Division of State Highway Patrol required a showing of a "custom or policy."

## VIII. The district court erred by impermissibly resolving the disputed issue of material fact regarding the Defendants conspiring with one another to violate Trooper Huff's rights under 42 U.S.C. § 1983.

As to Trooper Huff's Conspiracy in Violation of 42 U.S.C. § 1983 claim, the district court found that, "there is no evidence to support a finding that the defendants conspired with each other to violate the plaintiff's rights."  (Appx. 391).  In order "[t]o establish civil conspiracy under § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in

---

Trooper Huff's claims against any other defendant, but only against "the Department."

furtherance of the conspiracy which resulted in [defendants'] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, *W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Accordingly, a plaintiff's evidence "must, at least, reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* There is a genuine issue of material fact as to whether the Defendants conspired with one another to violate Trooper Huff's rights under 42 U.S.C. § 1983.

The timeline and sequence of events set forth above indicate that Trooper Huff was terminated under the pretext of untruthfulness after he stopped a politically connected individual who threatened his job and charged him with driving while impaired. *See supra* Section I.

Moreover, no member of the SHP, all of whom were involved, at least in some capacity, in Trooper Huff's ultimate termination, would take responsibility for the two charges added eighty-five days after his internal affairs interview, but just twenty-six days after his stopping and charging Stanberry with driving while impaired. (Appx. 153:11–25, 284:18–25, 285:22–25, 290:10–25, 291). Carter indicated that she was unaware of who made the decision to add the two additional charges, and stated that, when she prepared the Report of Investigation, it only included a single charge. (Appx. 153:11–25). Cotton stated that he believed Harris

made the recommendation to add the untruthfulness and conformance to law charges. (Appx. 284:18–25, 285:22–25). However, Harris denied that and said that she received a pre-filled Report of Investigation, which already included the two additional charges. (Appx. 290:10–25, 291). After Hayes received the report, he contacted Clayton, who indicated that the decision came from "above his pay grade." (Appx. 166:14–25, 167:1–4).

Tellingly, following Trooper Huff's termination, the SHP sent a letter to the Forsyth County district attorney stating that he had been terminated. (Appx. 239). During a follow up phone call, the district attorney was told that Trooper Huff was terminated for untruthfulness. (Appx. 240). Thereafter, when Trooper Huff contacted the district attorney's office, he was told that Stanberry's case had been dismissed (Appx. 252:4–8). Thus, the timeline and sequence of events, the cryptically added additional charges, and the fact that Stanberry's case was ultimately dismissed as a result of Trooper Huff's termination indicates that the Defendants conspired to violate Trooper Huff's rights. The district court therefore erred in determining a genuine issue of material fact regarding whether the Defendants conspired with one another to violate Trooper Huff's rights, an issue that would be properly resolved by a jury.

27

**IX. The district court erred in determining that there was insufficient evidence to support the contention that Trooper Huff was terminated in retaliation for charging Mr. Stanberry with a DWI.**

In dismissing Trooper Huff's Wrongful Discharge in Violation of Public Policy Claim, the district court stated that, "[t]his claim is dismissed because the evidence is insufficient to support the contention that the plaintiff was fired for charging Mr. Stanberry with DWI." (Appx. 391). However, the district court erred in determining that there was insufficient evidence to support the contention that Trooper Huff was fired for charging Mr. Stanberry with a DWI because the record reveals a genuine issue of material fact as to the reason for Trooper Huff's termination. As set forth more fully above, the record indicates that Trooper Huff was terminated not for his alleged untruthfulness but for charging Stanberry—a politically connected individual who threatened Trooper Huff's job—with driving while impaired. *See supra* Section I. The district court therefore erred in determining that there was insufficient evidence to support the contention that Trooper Huff was terminated in retaliation for charging Stanberry with driving while impaired. *See Bland v. Roberts*, 730 F.3d 368, 374–76 (4th Cir. 2013).

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant compels this Court to reverse

the district court's dismissal of Plaintiff-Appellant's claims and remand for trial.

Respectfully submitted,

/s/ Randolph M. James
Randolph M. James
NC Bar No. 10000
Attorney for Plaintiff
PO Box 20069
Winston-Salem, NC 27120
Phone: (336) 724-7707
Facsimile: (336) 724-9722
Email: rmjames@rmjameslaw.com

**REQUEST FOR ORAL ARGUMENT**

Plaintiff-Appellant urges the Court to grant oral argument in this case. The issues raised herein are complex, and oral argument would facilitate a better understanding of the case.

## CERTIFICATE OF COMPLIANCE

I, undersigned counsel, hereby certify this brief complies with Rule 32 of the Appellate Rules of Procedure. This brief has been prepared using a proportionally faced, 14-point Times New Roman Font. This Brief does not exceed 30 pages and contains no more than 13,000 words, exclusive of the cover page, table of contents, table of citations, statement regarding oral argument, addendums containing statutes rules or regulations, certificates of counsel, signature blocks, proof of service, and any item specifically excluded by Rule 32 or local rules.

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

FREDDIE WAYNE HUFF, II,

    Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF
PUBLIC SAFETY, an agency of North
Carolina; DIVISION OF STATE
HIGHWAY PATROL, a principal subunit of
an agency of the State of North Carolina;
FRANK L. PERRY, in his official capacity
as Secretary of the Department of Public
Safety and individually; WILLIAM J.
GREY, in his official capacity as
Commanding Officer of the Division of State
Highway Patrol and individually; JENNIFER
A. HARRIS, in her official capacity as the
Director of Professional Standards for the
Division of State Highway Patrol and
individually; and JOSEPH A. COTTON, in
his official capacity as the Director of
Internal Affairs with the Division of State
Highway Patrol and individually,

    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**APPEAL NO. 16-2378**

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing BRIEF

OF PLAINTIFF-APPELLANT upon:

32

Tammera S. Hill
Assistant Attorney General
Public Safety Section
N.C. State Bar No. 23172
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6500
Fax: (919) 716-6761
Email: thill@ncdoj.gov

by electronically filing the same which will automatically send notification of such

filing to all attorneys of record.

This 29th day of March 2017.

/s/ Randolph M. James
Randolph M. James
NC Bar No. 10000
Attorney for Plaintiff
PO Box 20069
Winston-Salem, NC 27120
Phone: (336) 724-7707
Facsimile: (336) 724-9722
Email: rmjames@rmjameslaw.com